**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

EDWIN HART TURNER                                              PETITIONER

v.                                                    No.  4:07CV77-WAP

CHRISTOPHER EPPS, ET AL.                                      RESPONDENTS

## MEMORANDUM OPINION AND ORDER

Edwin Hart Turner is an inmate confined to the Mississippi Department of Corrections who has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the otherwise final capital murder convictions and two sentences of death imposed on him by the Circuit Court of Forrest County, Mississippi, sitting on change of venue from Carroll County, Mississippi.  Having considered the alleged circumstances, the cited authorities, and the record in this matter, the Court **DENIES** the application for the reasons set forth below.

## Applicable Law

This petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320, 324-26 (1997) (AEDPA applies to all federal habeas applications filed on or after April 24, 1996).  Pursuant to the AEDPA's scope of review, habeas corpus relief cannot be granted in connection with any claim adjudicated on the merits in State court proceedings unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence.  *See Schriro v. Landrigan*, 550 U.S.

465, 473 (2007); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); and 28 U.S.C. § 2254(d)(1) & (2). The factual findings of the State court are presumed correct, and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d) have been held to have independent meanings. *See, e.g., Bell v. Cone*, 535 U.S. 685, 694 (2002); *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry, and it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."); *Williams,* 529 U.S. at 410-11; *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) (habeas relief merited where state decision both incorrect and objectively unreasonable).

A petitioner must exhaust his remedies in State court prior to seeking federal habeas relief. *See Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir. 2001); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); 28 U.S.C. §2254(b)(1). A petitioner has exhausted his claim when he has fairly presented the claim for which he seeks relief to the highest court of the State. *See*

*Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004). The federal claims presented for habeas relief must be the substantial equivalent of those presented to the State court in order to satisfy the requirement of fair presentation. *See Morris*, 379 F.3d at 204-05; *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). A claim is not exhausted for purposes of federal habeas review if a petitioner presents the federal court with different legal theories or factual claims from those pursued in State court. *See Wilder*, 274 F.3d at 259 ("[W]here petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement."); *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001). A federal court may not grant federal habeas relief on an unexhausted claim, but relief may be denied on an unexhausted claim. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also *Mercadel v. Cain*, 179 F.3d 271, 276 (5th Cir. 1999).

Where a petitioner fails to exhaust his State remedies, but it is clear that the State court to which he would return to exhaust the claim would find the claim procedurally barred, the claim is procedurally defaulted for purposes of federal habeas corpus relief. *See*, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Likewise barred from federal habeas review are claims that the State court held procedurally barred on review on the basis of independent and adequate State law grounds. *See, e.g., Coleman*, 501 U.S. at 729-30 ("The doctrine applies to bar federal habeas claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests upon independent and adequate state

procedural grounds."); *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). In order to receive federal habeas review of procedurally defaulted claims, Petitioner must demonstrate "'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 749-50 (internal citations omitted).

In order to demonstrate cause, a petitioner must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In some instances, counsel's ineffectiveness may suffice to establish "cause" for failure to exhaust a claim on appeal, but the claim of ineffectiveness must itself be brought as an independent claim and exhausted in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Prejudice may be demonstrated by showing that the errors "worked to [the petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 494 (internal quotations omitted). If a petitioner is unable to demonstrate cause and prejudice, he may obtain review of his claim by demonstrating that the application of the procedural bar would result in a miscarriage of justice because he is actually innocent of the crime. *See House v. Bell*, 547 U.S. 518, 537-38 (2006). An allegation of actual innocence requires that a petitioner support his claim "with new, reliable evidence that was not presented at trial and show that it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman v. Anderson*, 188 F.3d 635, 655 (5th Cir. 1999) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In terms of the sentencing phase, "miscarriage of justice" also means that, but for constitutional error, no reasonable juror would have found Petitioner eligible for the death penalty under the applicable

state law. *Sawyer v. Whitley*, 505 U.S. 335, 336 (1992).

Where a State court holds a claim barred on independent and adequate State law grounds and reaches the merits of the claim in the alternative, the bar imposed by the State court is not vitiated. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Hughes v. Dretke*, 412 F.3d 582, 592-93 (5th Cir. 2005) (alternate holding on merits by state court did not preclude imposition of bar on federal habeas review for petitioner's failure to contemporaneously object on federal constitutional grounds in state court); *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005) (procedural bar imposed for petitioner's failure to contemporaneously object and preserve claim for review not circumvented by State court's alternative holding that constitutional claim lacked merit).

Finally, the Court notes that the AEDPA imposes the burden of obtaining an evidentiary hearing in federal court on the petitioner, and it limits the circumstances in which an evidentiary hearing may be granted for those petitioners who fail to diligently seek to establish the factual bases for their claims in state court. *See Williams*, 529 U.S. at 433-34 (prisoners at fault for deficiency in state court record must satisfy heightened standard to obtain evidentiary hearing); *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir. 2000); *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998); 28 U.S.C. § 2254(e)(2). Even where an evidentiary hearing is not precluded due to a petitioner's lack of diligence, the decision to grant an evidentiary hearing is discretionary. *See, e.g., Clark,* 202 F.3d at 765-66. In order to be entitled to an evidentiary hearing in federal court, a petitioner must demonstrate that he was denied a "full and fair hearing" in State court and persuade the Court that his allegations, if true, would warrant relief. *Id.* at 766 (citations omitted).

## Facts and Procedural History

On the evening of December 12, 1995, Edwin Hart Turner and Paul Murrell Stewart were drinking beer and smoking marijuana while driving around in Stewart's automobile. When the vehicle became stuck in a ditch, Petitioner and Stewart abandoned the vehicle and walked to the nearby home of Doyle Carpenter, a friend of Petitioner's. After Carpenter was unsuccessful in helping the pair free the vehicle from the ditch, he took them to Petitioner's home on Spring Lake. Petitioner and Stewart then decided to rob some stores in Carroll County, Mississippi. They first drove to Mims Truck Stop and, finding it too crowded, left and drove to Mims Turkey Village Truck Stop, some four miles away. At approximately 2:00 a.m. on December 13, 1995, the pair entered Mims Turkey Village Truck Stop wearing masks and carrying rifles. Petitioner carried a 6mm rifle, while Stewart carried a .243 rifle. After walking into the store, Petitioner shot the store clerk, Eddie Brooks, in the chest, and he fell to the floor behind the counter. Petitioner and Stewart tried unsuccessfully to open the cash register. Petitioner struck the register with the butt of his gun, and then both men shot the cash register. When the register still did not open, Petitioner placed the barrel of his rifle inches away from Mr. Brooks' head and shot him.

Petitioner and Turner then drove back to Mims One Stop. Everett Curry was outside of the store pumping gas, and several people were inside of the store. While Stewart went inside of the store, Petitioner ordered Curry to the ground and shot him in the head. Testimony was offered at trial to support a conclusion that Petitioner also robbed Curry of the money in his wallet. Stewart, inside of the store, grabbed some of the store's cash after the clerk opened the register and put the money into a paper bag. Petitioner came into the store while pointing his

gun at the people inside, and Stewart stated at trial that he told Petitioner there was no need to kill anyone else because he had the money. The pair left the store and returned to Petitioner's house, putting the guns inside. Stewart testified that he counted the money, which the pair split, while Petitioner prepared something to eat. After eating, they went to sleep. They awoke to law enforcement officers knocking on the door the next morning.

A 6mm and .243 rifle were discovered in Petitioner's home, and the State's firearms expert matched the shell casings found at the scene of Brooks' murder to the rifles in Petitioner's home. Petitioner's fingerprints were also found on the 6 mm rifle, and the hockey mask Stewart had been wearing during the robberies was found in the backseat of Petitioner's car. Petitioner and Stewart were arrested and taken to the Carroll County Sheriff's Department. Stewart gave a full confession. He pled guilty to two counts of capital murder and received consecutive life sentences without parole. As part of his plea, he agreed to testify against Petitioner. Petitioner's trial on two counts of capital murder while engaged in armed robbery began on February 10, 1997, with John Collette and James K. Dukes serving as retained trial counsel. The jury found Petitioner guilty of both counts of capital murder and imposed the death penalty. Petitioner's convictions and death sentences were affirmed on direct appeal. *Turner v. State*, 732 So.2d 937 (Miss. 1999), *cert. denied*, *Turner v. Mississippi*, 528 U.S. 969 (1999) ("*Turner I*"). Petitioner sought post-conviction relief, which was also denied. *Turner v. State*, 953 So.2d 1063 (Miss. 2007) ("*Turner II*"). The instant petition followed.[1]

_____

[1] The Court notes that the claims raised in the petition in this cause differ somewhat from the claims briefed in the memorandum of law filed in support of the petition. This Court considers Petitioner's claims as they were briefed in his memorandum. Petitioner states that his memorandum "sets forth the factual and legal arguments for granting any or all of the fifteen claims for relief pled in the Petition. The memorandum also discusses two claims that have not heretofore been pled, but

# I. Ineffective Assistance of Counsel

Petitioner here claims, as he did in State court, that he received the ineffective assistance of counsel at various stages of his trial and direct appeal. A criminal defendant has the constitutional right to effective counsel, both at trial and on direct appeal. U.S. Const. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 688, 688 (1984); *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985). In order to establish that he was denied effective counsel, Petitioner must show that his attorney rendered constitutionally deficient performance that actually prejudiced him. *Strickland v. Washington*, 466 U.S. at 687. This requires Petitioner to show (1) that counsel's performance fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that, but for counsel's deficient performance, the result of the proceeding would have been different. *See id.* at 688, 695. Judicial scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance or sound trial strategy. *See id.* at 668, 688-89. Both the "deficiency" and the "prejudice" prongs must be satisfied, or it cannot be said that the adversarial process was so lacking that it rendered an unreliable result, thereby denying Petitioner a fair trial. *See id.* at 687. On habeas review, the issue is whether the *Strickland* decision reached in State court was contrary to or an unreasonable application of clearly established federal law. *See Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003) (holding that "the test is whether the state court's decision - that [the petitioner] did not make the *Strickland*-showing - was contrary to, or an unreasonable application of, the standards, provided

---

which this Court may consider in the first instance." (Pet. Memo 2). The Court notes that issues raised in the petition but not briefed are considered abandoned by this Court. *See, e.g., Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

by the clearly established federal law. . .").  The Court notes that Petitioner retained the services of John Collette and James K. Dukes, men called by the Mississippi Supreme Court as "renowned attorneys" who "enjoy a statement reputation of respect and competency," to serve as his trial counsel.  *Turner II*, 953 So.2d at 1067.  John Collette also served as counsel for Petitioner during his direct appeal.  *See id.*

## A.  Ineffective Assistance of Counsel Pre-Trial

### 1.  Waiver of right to maintain venue

Before trial, defense counsel moved for a change of venue from Carroll County, citing the "great deal of highly prejudicial and adverse pervasive publicity in this case, including both media and word of mouth publicity, making a fair trial impossible in this district."  (SCP vol. 1, 89).[2]  The motion was granted, and venue was changed to Forrest County, Mississippi.  In his habeas petition, Petitioner argues that trial counsel was ineffective in agreeing with the State for the change of venue, as his family was long-established and well-known in Carroll County.  He maintains that counsel failed to fulfill their duty of considering the reduced prejudices of the citizens of Carroll County, and that he had the right to be tried in the venue where the crime occurred.  Citing *State v. Caldwell*, 492 So.2d 575 (Miss. 1986), he argues that he had the absolute right under State law to be tried where the crime occurred, and that Petitioner's wavier of that right was involuntary due to counsel's ineffectiveness.

On post-conviction review, the Mississippi Supreme Court noted that Petitioner

---

[2]    The transcript in this case is comprised of fifteen consecutively numbered volumes. Volumes one through five are State court papers, hereinafter designated as "SCP vol. __, __." Volumes six through fourteen contain the trial transcript, hereinafter designated as "Trial Tr. vol. __, ___."  Volume fifteen is the "Report of the Trial Judge Where Death Penalty Imposed."

knowingly waived his right to be tried in Carroll County upon the advice of his trial counsel. *Turner II*, 953 So.2d at 1068. The court found his argument that Carroll County jurors might have been more familiar to his troubled family history and psychiatric problems and thus more lenient unpersuasive. *See id.* The court noted that in *State v. Caldwell*, 492 So.2d 575 (Miss. 1986), the issue was whether a defendant had the right to "undo" his prior venue transfer request in a subsequent proceeding. *See id.* Petitioner, however, waived his right to be tried in Carroll County, and "[i]n the absence of remand, the issue of where he would like to be tried is moot." *See id.* The court found Petitioner's claims of prejudice by counsel's actions "entirely hypothetical" and found that he failed to demonstrate prejudice. *See id.* at 1068-69. The court also found that Petitioner failed to overcome the presumption that the decision to change venue was a sound trial strategy, as there was "a great deal" of prejudicial and adverse publicity in the case. *See id.* at 1069. As valid reasons existed for the attorneys' decision to request a change of venue, the court found no deficiency in counsel's performance. *See id.*

Petitioner argues that controlling precedent requires that decisions such as that of changing venue require "sufficient awareness of the relevant circumstances and likely consequences." (citing *McMann v. Richardson*, 397 U.S. 759, 766 (1970)). Petitioner maintains that an analysis involving counsel's advice to waive local venue is analogous to the issue of counsel's advice in waiving a trial by jury, which is governed by precedent as set forth in *McMann v. Richardson*, 397 U.S. 759, 790 (1970) and *Hill v. Lockhart*, 474 U.S. 52 (1985). Petitioner maintains that he is entitled to habeas relief in light of the controlling precedent, as the appropriate inquiry for the Mississippi Supreme Court's prejudice determination should have been whether, had he been competently advised, Petitioner would have decided not to waive his

right to be tried in the local venue.   He also argues that counsel performed deficiently, as he did not investigate prior to advising Petitioner that a change of venue was in his best interests.

Petitioner has not demonstrated that the rejection of his *Strickland* claim was contrary to or involved an unreasonable application of clearly established federal law.   At a pre-trial hearing on August 6, 1996, the trial court inquired whether Petitioner understood the change of venue motion that had been filed on his behalf and whether he had any objection to the motion.   (*See* Trial Tr. vol. 6, 25-26). In support of the motion, counsel argued that the pervasive publicity, both by media and word of mouth, made a fair trial impossible in Carroll County.   (*See* SCP vol. 1, 89).   Petitioner stated he understood the motion and had no objection.   (*See* Trial Tr. vol. 6, 25-26).   In *Faraga v. State*, 514 So.2d 295, 306-07 (Miss. 1987), the Mississippi Supreme Court stated that whether to change venue was a strategic decision that required the attorney to "weigh the odds" in such a manner that it would be second-guessed only in extreme circumstances. Petitioner has not demonstrated that it was unreasonable for the Mississippi Supreme Court to find counsel had not been deficient in seeking a change of venue.   Moreover, the federal constitutional right at issue is that of a fair trial by impartial jurors. U.S. Const. Amend. VI.   The Fifth Circuit has determined that the Sixth Amendment's venue provision does not apply to the states.   *See Martin v. Beto*, 397 F.2d 741, 748 (5th Cir. 1968).   Counsel's tactical decision did not lessen or obscure any constitutional safeguard for Petitioner, and his argument of prejudice is hypothetical.   *See Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986).   Petitioner has therefore also failed to demonstrate that the rejection of this claim on prejudice grounds was unreasonable, and this claim shall be dismissed.

**2. Failure to raise *Batson* objection**

Petitioner maintains that his trial counsel rendered ineffective assistance in failing to object to any of the State's peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986) or otherwise make a record of the race of the venire members. He argues that as trial counsel filed a pre-trial motion to prevent the prosecution from the discriminatory use of peremptory challenges, counsel did not make a strategic decision to forego challenging the prosecution's strikes. Moreover, he argues that the absence of a record on the race of the venire members establishes ineffective assistance by appellate counsel, as well. Petitioner maintains that the rejection of this claim during State court proceedings is an unreasonable application of clearly established Supreme Court precedent, as well as an unreasonable determination of facts presented to the State court.

On post-conviction review, the Mississippi Supreme Court noted that the racial makeup of the members of the jury pool was not part of the record, though it noted that Petitioner and his accomplice are white and that the murder victims were both black. *See Turner II*, 953 So.2d at 1069. The court noted the presumption of competency afforded the attorneys' performance, and that "Turner makes no specific claim as to any individual juror and he offers no specific questionable peremptory challenge utilized by the State." *See id.* The court found no prejudice as a result of Petitioner's claimed "hypothetical deficiency," and that he failed to satisfy either prong of *Strickland*. *See id.* at 1069-70.

On post-conviction review, Petitioner sought a *Batson* hearing, but he did not avail himself to procedures to reconstruct the racial makeup of the venire or the strikes exercised at trial. (*See* PCR Pet. at 5, ¶18). Respondents argue, and this Court agrees, that Petitioner's failure

to factually develop his claim in State court precludes the Court from now holding a hearing on the claim. *See* 28 U.S.C. § 2254(e)(2). Petitioner did not develop this claim in State court and cannot here seek further development. *See Williams v. Taylor*, 529 U.S. 420, 437 (2000). The Court otherwise notes that the fact that counsel did not make a record on the race of the jury panel is not *per se* ineffective assistance of counsel. *See also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[E]rrors of tactics or omission do not necessarily mean that counsel has functioned in a constitutionally deficient manner."). Petitioner bears the burden of proving racial discrimination in jury selection, and he must make out a prima facie case of racial discrimination to shift the burden to the State to provide a race-neutral explanation for the strike. *Purkett v. Elem*, 514 U.S. 765, 767 (1995). As Petitioner cannot establish that any minority venireperson was struck by the State, much less that they were struck with a discriminatory intent, he cannot establish ineffective assistance of counsel on this conclusory argument. *See Medellin v. Dretke*, 371 F.3d 270, 278 (5th Cir. 2004) (reasoning that where underlying *Batson* claim necessarily fails, so does the ineffectiveness claim based upon the alleged error); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Petitioner has not demonstrated that he is entitled to relief on the basis of the State court's adjudication of this claim, and it shall be dismissed.

**3. Failure to press severance issue**

Petitioner was charged with the murder of Eddie Brooks and Everett Curry in conjunction with two separate armed robberies at two separate convenience stores. At trial, defense counsel moved to sever the multi-count indictment against Petitioner, and the trial court denied the motion. Petitioner maintains that counsel rendered ineffective assistance in not pursuing the claim on direct appeal, as the two counts were not "based on the same acts or transactions" and

were not "part of a common plan" as required for a multi-count indictment under Mississippi law.

Petitioner's argument is that had counsel conducted a pre-trial investigation, counsel could have

presented evidence that Petitioner was acting on bipolar mania at the time of the crime. This

evidence, Petitioner maintains, would have demonstrated not only the absence of a plan, but also

that Petitioner was acting in a Prozac-driven mania. Specifically, Petitioner notes that the

declaration of Paul Murrell Stewart, his co-defendant, states that Stewart thought Petitioner had

gone insane the night of the murders. (*See* Pet. Memo, Ex. 16). Petitioner argues that the

Mississippi Supreme Court's decision unreasonably applied *Strickland*, as it failed to consider

that there was no plan, which was evidence a proper investigation would have revealed.

Moreover, he argues that the evidence that was presented was unreasonably determined in light of

that evidence, as under the State's theory, there would almost never be two crimes committed on

the same night that could not be tried together.

Petitioner argued on post-conviction review that his attorneys were ineffective in failing to

appeal the trial judge's decision not to sever the counts. *Turner II*, 953 So.2d at 1070. The

Mississippi Supreme Court, citing *Eakes v. State*, 665 So.2d 852 (Miss. 1995), recited the

requirements for multiple counts in a single indictment. *See id.* at 1070-71. The Court noted that

the State must first demonstrate that the offenses fall within the language of the statute allowing

multi-count indictments. *See id.* at 1071. If the State makes out a prima facie case that the

offenses fall within the statute, the defense may offer rebuttal to show that the offenses were

separate and distinct acts. *See id.* The trial court then "should consider the time period between

the offenses, whether evidence proving each offense would be admissible to prove the other

counts, and whether the offenses are interwoven." *Id.* The trial court's finding, if the correct

procedure is followed, is given deference by the Mississippi Supreme Court on review. *See id.*

Reiterating the evidence presented to the trial court, the Mississippi Supreme Court noted that "[t]he murders took place during the execution of Turner and Stewart's common plan to commit robberies. The time frame involved was approximately twenty minutes. Much of the evidence at trial related to both crimes. Clearly, the two murders were interwoven. The trial court did not abuse its discretion in its decision not to sever the counts. Accordingly, the attorneys' failure to raise that issue on appeal is of no consequence." *Id*. at 1071.

At a pre-trial hearing, defense counsel Collette presented the trial court with a motion to sever the indictment, arguing that the crimes occurred at two different locations, with two different victims, and at two different times. (Trial Tr. vol. 7, 185-86). He noted that there was no relation between the two locations, and that there were different facts and elements of proof at each location. (*See id.* at 186). He maintained that trying the cases together would be highly prejudicial, as the jury would not be able to segregate the two cases for purposes of considering the evidence. (*See id.* at 186-87). The State countered that the evidence proved that the defendants intended a robbery at one of the locations, which were 4.3 miles apart, and that the crimes occurred within minutes of one another. (*See id.* at 187-88). After hearing the arguments, the trial court overruled the motion to sever the counts. (*See id.* at 189).

The Mississippi Supreme Court found that Petitioner and Stewart had a plan to commit robberies, and that the time frame for both of the crimes was approximately twenty minutes. *Turner II*, 953 So.2d at 1071. The court noted that the same masks, weapons, vehicle, and modus operandi were involved in the crimes, and that the murders were interwoven. *See id.* The court found that as the trial court did not abuse its discretion in failing to sever the counts, the

"attorneys' failure to raise that issue on appeal is of no consequence." *Id.*

"[A]ppellate counsel is not constitutionally ineffective just because he does not raise every non-frivolous issue requested by the defendant." *Sharp v. Puckett*, 930 F.2d 450, 452 (5th Cir. 1991) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Rather, he must show that counsel was objectively unreasonable in failing to raise the non-frivolous issue and a reasonable probability that, if it had been raised, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Mississippi law provides that multiple charges may be tried together if "(a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Miss. Code Ann. § 99-7-2(1). Here, there was evidence of a plan to commit robbery, and much of the evidence pertained to both crimes, and the crimes occurred only a few miles apart and within less than a half-hour of one another. Petitioner's co-defendant testified that he and Petitioner decided to rob some stores while sitting at Petitioner's home. Petitioner has failed to demonstrate that it was unreasonable for the Mississippi Supreme Court to conclude that counsel did not perform ineffectively in failing to raise this issue on appeal, and this claim shall be dismissed.

### B. Ineffective Assistance of Counsel at Guilt Phase

#### 1. Failure to raise issue of silence

Petitioner contends that trial counsel rendered ineffective assistance in not assigning on appeal as grounds for reversal that the prosecutor, in closing argument, made an indirect comment on Petitioner's failure to testify in violation of the Fifth Amendment. He maintains that the Mississippi Supreme Court made an unreasonable determination of facts in determining that the comments were not a suggestion to infer Petitioner's guilt from his silence.

The District Attorney stated the following in his closing:

> We put on 17 witnesses. On one hand the Defense Counsel says we shouldn't have put on but one. On the other hand, they say we should have put on more. We put on the hand, they say we should have put on more. We put on the witnesses that we thought ya'll needed to hear to make your decision. We could have probably put on forty witnesses, but why? We wanted to make sure that you had the facts that you needed to have. And one thing I want to make sure that ya'll understand; both sides have the right to subpoena witnesses, and **you can bet if there was anything that was inconsistent, they would have put these other witnesses on.** They had the right to do that. There is no sense in just keeping on and on - -
>
> BY MR. COLLETTE: - - I object to that argument, Your Honor. I think it is beyond direct, and it also impinges on the Defendant's Fifth Amendment rights.
>
> BY THE COURT: I don't think it does that, but let's stick, let's just stick to the evidence in this case.

(Trial Tr. vol. 13, 1144-45) (emphasis added).

On post-conviction review, Petitioner argued that the above-cited passage was an improper comment on Petitioner's failure to testify that counsel should have raised as a claim of error on appeal. *See Turner II*, 953 So.2d at 1071-72. The Mississippi Supreme Court noted the "obvious difference between the defendant's failure to testify and a comment on defendant's failure to put on a credible defense," and it found the prosecutor's comments a "fair response to the defense's claim that the State failed to call some witnesses who could have been helpful to the jury." *Id.* at 1072. The court found that the argument was not improper, and counsel was not ineffective in failing to raise the issue on appeal. *See id.*

A defendant's Fifth Amendment right, applicable to the states through the Fourteenth Amendment, is infringed upon if the prosecutor alludes to or comments on the defendant's failure to testify at trial. *Griffin v. California*, 380 U.S. 609, 615 (1965). To be the denial of the right to remain silent, however, the comment must have been manifestly intended as a remark on Petitioner's silence, or the remark must have been of such a character that the jury would

17

necessarily construe it as a comment on Petitioner's silence. *See Cotton v. Cockrell*, 343 F.3d 746, 751 (5th Cir. 2003). If there is another, "equally plausible explanation for the remark," the prosecutor's intent is not manifest. *See id.*; *see also Barrientes v. Johnson*, 221 F.3d 741, 780-81 (5th Cir. 2000). Moreover, even if constitutional error is found, habeas relief cannot be granted unless Petitioner shows that the error "has substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *Chapman v. California*, 386 U.S. 18, 25 (1967) (holding *Griffin* error subject to harmless error analysis).

 In its closing argument, the defense argued that Stewart's testimony was "bought," in that the District Attorney threatened Stewart with the death penalty if he did not testify against Petitioner. (*See* Trial Tr. vol. 13, 1132-35). The comment complained of here was in response to defense counsel's argument that the State did not present the witnesses from the second store rather than rely upon Stewart's "bought" testimony. (*See id.* at 1132-36). The argument by the District Attorney could be construed as a remark on the defense's failure to counter the State's presented evidence, which does not violate Petitioner's constitutional rights. *See Montoya v. Collins*, 955 F.2d 279, 287 (5th Cir. 1992) (holding that a defendant's Fifth Amendment privilege is not violated where the comment is on the defense's failure, rather than the defendant's, to counter or explain the introduced evidence). As the jury would not have necessarily considered the District Attorney's statements as a comment on Petitioner's failure to testify, Petitioner's Fifth Amendment privilege was not violated. *See Barrientes*, 221 F.3d at 780. Moreover, the jury in this case was instructed not to consider the arguments of counsel as evidence, and it was instructed that it could not consider Petitioner's decision not to testify as evidence of guilt. (*See* SCP vol. 4, 541, 544). Even if the argument could be construed as error, in light of the evidence

of Petitioner's guilt and the instructions to the jury, Petitioner has not demonstrated it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. Petitioner has failed to demonstrate that the decision of the Mississippi Supreme Court entitles him to relief on this claim under the AEDPA, and this claim shall be dismissed.

### C. Ineffective Assistance at Sentencing Phase

### 1. Failure to prepare and present mitigation evidence

Petitioner contends that the full extent of his mental illness was not explored at trial due to counsel's failure to conduct an adequate investigation. As a result, he maintains, defense counsel presented inaccurate information and failed to present a full picture of Petitioner's upbringing and background. Petitioner maintains that counsel failed to uncover his family's lengthy history of mental illness, and he failed to interview and present witnesses who could have testified as to how his father's death affected his life. He contends that these witnesses could have also testified to the alcoholism in his family, as well as the abuse and neglect he and his younger brother suffered. He additionally argues that defense counsel presented Dr. Galvez's testimony that Prozac, the medication Petitioner had been prescribed at the Mississippi State Hospital, controlled his mental illness, while he argues that the medication actually triggered manic episodes. He maintains that these instances of deficient performance resulted in actual prejudice to him at the sentencing phase of trial.

In support of his claim, Petitioner attaches twenty-two exhibits that recount facts surrounding Petitioner's upbringing and family life, as well as various perceptions from family and friends of defense counsel's efforts at trial. (*See generally* Pet. Memo Ex. 1-22). Petitioner argues that the affidavits attached to his federal habeas petition describe him as a bright, loving child who began a downward spiral in adolescence when the first symptoms of mental illness

became apparent. He also attaches a declaration from Dr. Marc Zimmerman, a forensic psychologist who evaluated Petitioner in 2008, and who states that Petitioner "likely suffers from a bipolar disorder or possible schizoaffective disorder." (Pet. Memo, Ex. 7).

The affidavits and records filed in this case recount a long history of mental and emotional upset in the Turner family. Petitioner is the son of Ladonna ("Donna") and Edwin Turner, both of whom were excessive drinkers who engaged in violent fights after they had been drinking. (Ex. 3, 4, 6, 9).[3] The affidavits of family members state that Petitioner and his younger brother, Trent, were often dirty, unkempt, and physically and verbally abused by Donna. (Ex. 1, 3, 5, 10). Family members note that Donna's drinking became heavier after she and Edwin divorced, and that she twice attempted suicide. (Ex. 1, 9). Family members note that when Edwin died in a dynamite explosion when Petitioner was twelve years old, Donna refused to allow the boys to grieve over the loss of their father and cut Petitioner off from the Turner family. (Ex. 1, 2, 11, 12).

The affidavits recount that Donna's drinking became more excessive after she met and married Lewis Hodges, who did not appear to be fond of Petitioner or Trent. (Ex. 9, 12). Family members state that it was not unusual for Donna to forget to pick up the boys from school, and that it was not an infrequent occurrence for family members to find them wandering around town until someone arrived to get them. (Ex. 4, 6, 9). Hodges is alleged to be a "mean" drunk who beat Petitioner and his brother, and numerous family members note that Donna refused to let family help her care for her sons. (Ex. 1, 5, 10, 2, 11). Pam Creswell[4], one of Donna's sisters,

---

[3] Unless otherwise noted, all of the exhibits referenced in this section are attached to Petitioner's memorandum of law filed in support of his petition for a writ of habeas corpus.

[4] The trial transcript designates her as "Crestwell," but the affidavit filed in State court and this Court uses the spelling "Creswell."

even notified the Department of Human Services of Donna's treatment of the boys, but the boys were not removed from the home. (Ex. 9, 11).

Petitioner alleges that he began to display signs of mental illness by 1988, when he was fifteen years old. Petitioner was taken at least twice to Greenwood Leflore Hospital ("GLH") for drug testing between 1988 and 1991 in response to his parents' complaint that he was "acting funny," but the tests proved negative. (Ex. 7).[5] On April 13, 1991, Petitioner attempted suicide by shooting himself with a rifle. Though the suicide attempt was unsuccessful, Petitioner was left severely disfigured by the blast. Hospital records from the admission for the suicide attempt note Petitioner's impulsivity, poor anger control, and "acting out" behaviors. (Ex. 7). Petitioner was admitted to St. Joseph Hospital and prescribed an antidepressant before being discharged in August 1991 with a diagnosis of Major Depression and a "fair to poor" prognosis. (Ex. 7). It was noted in the records that Petitioner had a poor relationship with his mother, who often failed to appear for family therapy sessions. (Ex. 7). Petitioner was readmitted to St. Joseph's in September 1991 exhibiting a myriad of symptoms associated with depression, hostility, and denial. (Ex. 7). It was noted that he had wrecked the car of his stepsister and the car of his stepfather since his last hospitalization, and when he was discharged after three weeks, it was with a diagnosis of Dysthymic Disorder and with notations as to his irritability and denial. (Ex. 7).

Petitioner suffered head trauma from a single-vehicle accident on November 27, 1991, approximately two months after leaving St. Joseph's, and he was intoxicated at the time. (Ex. 7;

---

[5] The facts surrounding Petitioner's various mental and medical treatments are summarized in Dr. Zimmerman's affidavit, which is attached as Exhibit 7 to Petitioner's memorandum. The actual records, however, were filed in State court as exhibits to the petition for post-conviction relief. (*See* PCR Ex. P-S).

PCR Ex. S).  A month later, he was admitted to GLH and diagnosed with alcoholism and agitated depression.  (Ex. 7).  The next day, on December 28, 1991, Petitioner was admitted to Parkwood Hospital under court order for Polysubstance Dependance, and he admitted his use of alcohol and illicit drugs.  (Ex. 7).  He was eventually discharged in February 1992.  (Ex. 7).  On January 26, 1993, Petitioner was taken to GLH with acute alcohol intoxication and was diagnosed as suffering with drug and alcohol intoxication as well as a possible personality disorder.  (Ex. 7).  Records describe him as suicidal, aggressive, hostile, and uncooperative.  (Ex. 7).  He was discharged four days later, and his "chronic agitated depression" was noted on the records. (Ex. 7).

Petitioner attempted suicide a second time on June 25, 1995, by cutting his wrists.  He was taken to GLH, where he admitted he had been drinking alcohol prior to the accident.  (Ex. 7).  He claimed that he had not been planning a suicide attempt, and that he had been feeling well in the days leading up to the incident.  (Ex. 7).  Staff notes indicate that Petitioner needed psychiatric care for what they believed to be an impulse disorder.  (Ex. 7).  Petitioner was discharged on July 2, 1995, and the treating physician noted on the discharge summary Petitioner's chronic depression, unresolved childhood issues, anger, and very poor family relationships. (Ex. 7).  He was readmitted two months later pursuant to a court order and prescribed 20 mg of Prozac daily, a dose that was doubled before he was discharged to the Mississippi State Hospital. (Ex. 7).  At the Mississippi State Hospital, Petitioner was found to have Major Depressive Disorder and Borderline Personality Disorder. (Ex. 7).  The treating psychologist noted that "self-destructive behavior in the future would not be surprising" from Petitioner.  (Ex. 7).  He was released from the State Hospital on October 23, 1995, under an order for outpatient therapy and referred to Dr. Barbara Goff.  (Ex. 7).  He was prescribed Prozac and cautioned not to drink alcohol. (Ex 7). Petitioner failed to comply with the conditions of his release, and the murders occurred about six

weeks after his release from the State Hospital.

Petitioner argues that his mother's callous attitude toward Petitioner worsened his mental illness. He maintains that his father's family was not allowed to see him in the hospital following his first suicide attempt. (Ex. 1, 2, 3, 5, 12). At one point, Petitioner's parents threw him out of the lake house he and his brother owned, and his aunt Marsha and her husband found him living in a tent in the woods. (Ex. 9, 11). Another aunt, Pam Creswell, notes that Petitioner could have used the principal from the trust left to him by his father for medical treatment, but that Donna would not take steps to get him better medical care. (Ex. 9). Current habeas counsel, Lori Bell, maintains that Petitioner's mother tried to sabotage his relationship with Lori, telling him that no one could possibly love him because of his disfigurement. (Ex. 15). He maintains that most of this evidence was not presented to the jury for its consideration, and that the information that was elicited was inadequately presented.

Additionally, Petitioner maintains that Prozac is not recommended for people with Bipolar Disorder and may trigger manic episodes. He maintains that there existed evidence to support the conclusion that he was in a manic episode at the time of the crime, and that trial counsel failed to investigate the possibility. For example, Petitioner notes that before the crimes he was staying up all night, describing to family that he could not "think right," that his mind was going too fast, and friends noted he was acting more irritated and outrageous. (Ex. 9, 13, 15, 16). Petitioner also failed to keep his appointment with Dr. Goff for court-ordered outpatient therapy. (Ex. 17). Petitioner argues that though his grandmother and great-grandmother were hospitalized and diagnosed as schizophrenic, his genetic predisposition to mental illness was not explored by trial counsel. (Ex. 18, 19). Petitioner contends that the medical history that was presented at trial was insufficient, and that the testimony presented through his expert, Dr. Galvez, was inaccurate and

damaging. He maintains that counsel did not speak to relatives on his father's side of the family or to Lori Bell, despite their willingness to testify. (Ex. 1, 2, 3, 5, 6, 10, 12, 13, 14, 15). He maintains that an investigator was sent to interview his relatives from his mother's side of the family, but that the family members were hesitant to speak openly because Donna was present. (Ex. 9). Later meetings, according to the family, were cancelled by defense counsel. (Ex. 9).

Petitioner notes that during his pre-trial competency hearing, Dr. Reb McMichael, testifying for the State, stated that the Prozac prescribed to Petitioner would have added to his impairment on the night of the murders, particularly as it was combined with the use of alcohol and marijuana. (*See* Trial Tr. vol. 7, 230). At sentencing, the jury was instructed to consider two statutory mitigating factors relevant to Petitioner's mental state at the time of the crime. One, they were to consider whether "[t]he offense was committed while the defendant was under the influence of extreme mental or emotional disturbance." Miss. Code Ann. § 99-19-101(6)(b). Two, they were to consider whether "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." Miss. Code Ann. § 99-19-101(6)(f). Petitioner maintains that counsel was ineffective in failing to seek a pharmacologist to testify to the effects of the drugs on Petitioner's mental state and thereby offer support for two statutory mitigating circumstances that were considered by the jury.

During his State court proceedings, Petitioner presented the affidavit of Dr. Anthony J. Verlangieri, a biochemical toxiocologist/pharmacologist, who states that a pharmacological examination is warranted in Petitioner's case. (*See* Pet. Memo, Ex. 8, Aff. of Anthony J. Verlangieri, March 4, 2002). Dr. Verlangieri notes that Prozac can trigger mania in some people with mental disorders, opines with reasonable likelihood that Petitioner suffers some type of brain dysfunction, and notes that Petitioner's attorneys are making arrangements to have him tested.

(*See id.* ¶ 11). Dr. Verlangieri notes that he cannot perform the needed examination until a full history and neuropsychological battery have been conducted. (*See id.*).

In this Court, Petitioner has submitted for the first time in any proceeding the declaration of Dr. Marc Zimmerman, who opines that Petitioner would have met the above-cited statutory mitigating circumstances at the time of his trial, as there is evidence that the administration of Prozac triggered a manic episode in Petitioner. (Ex. 7). Dr. Marc Zimmerman's declaration states that "Prozac should not be prescribed to patients who exhibit signs of mania. There are numerous indications that [Petitioner] was in a manic phase for a great deal of the time from his discharge until the crime. Based on the materials available to me, I conclude to a reasonable degree of medical certainty that the Prozac triggered mania." (Pet. Memo, Ex. 7 ¶ 54, October 13, 2008). He also concludes that, at the time of the offense, Petitioner "was under the influence of extreme mental or emotional disturbance" and his capacity "to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." (*See id.* ¶ 57). Petitioner argues that counsel's failure to retain the expert services necessary to present testimony that Petitioner became manic after his discharge due to the effects of Prozac was deficient performance that prejudiced him at trial. Moreover, Petitioner maintains that the testimony that was presented failed to draw a connection between Petitioner's behavior and that of his parents, and that the testimony did not include an exploration of the mental illness suffered by Petitioner's grandmother and great-grandmother.

At the sentencing phase of Petitioner's trial, three family members and one expert testified for the defense. These witnesses testified to Petitioner's loving, respectful nature as a child; his popularity in school; the physical and verbal abuse he was subjected to at home; that he had been institutionalized several times; that he had attempted suicide twice; that he was kicked out of the

home left to him by his deceased father and forced to live in the woods; that family members had called the Department of Human Services to report the abuse and neglect Petitioner and his brother suffered; that Petitioner's mother favored Trent over Petitioner; that the State failed to properly treat his illnesses; that family members met with a judge to try to get Petitioner sentenced somewhere he would receive proper care; that family members attempted to take Petitioner and Trent, but Donna refused to allow them to go live with family members; and that Petitioner's family life, medical treatment, and untreated personality disorder led to this crime. (*See* Trial Tr. vol. 13, 1158-1199; Trial Tr. vol. 14, 1200-27).

Also testifying for the defense at the sentencing phase was Dr. Rodrigo Galvez, a psychiatrist. (*See* Trial Tr. vol. 14, 1206). He was initially hired by the defense to interview Petitioner to determine his competency to stand trial and whether he was sane at the time of the offenses. (*See id.* at 1208). Dr. Galvez reviewed all of Petitioner's prior medical records and evaluations and determined that he was competent to stand trial and not insane at the time of the crimes. (*See id.*). Dr. Galvez testified in mitigation about Petitioner's three prior involuntary commitments and the court-ordered requirements of his release from the State Hospital in October of 1995. (*See id.* at 1208-1210). At the time of his release from the State Hospital, as noted by Dr. Galvez, Petitioner was ordered to comply with outpatient therapy, refrain from the use of drugs and alcohol, and take his prescribed medication. (*See id.* at 1209-10). He testified that Petitioner's actions on the night of the murders was not the result of Prozac, but due to his untreated personality disorder along with his consumption of alcohol and marijuana. (*See id.* at 1211-19).

Dr. Galvez testified that Petitioner suffered from Major Depression and "probably substance abuse," as well as Borderline Personality Disorder. (*See id.*). Dr. Galvez discounted

the probability that Petitioner's prescribed medication contributed to the crimes, as the Prozac was prescribed for, and in his opinion was successfully treating, Petitioner's depression. (*See id.*). Dr. Galvez opined that it was Petitioner's untreated personality disorder that led to the crimes, and that Petitioner's numerous hospital records clearly indicated its presence and need for treatment. (*See id.* at 1212-13). Dr. Galvez also testified that he was not surprised to hear accounts of Petitioner's abusive and neglected childhood, as personality disorders are created by circumstance. (*See id.* at 1213). Dr. Galvez testified that though Petitioner knew what he did was wrong at the time of the crimes, he lacked the ability of someone who was not suffering from mental illness to stop his behavior. (*See id.* at 1218). He maintained that Petitioner's "per se" lack of "moral brakes," combined with beer and marijuana, made him incapable of controlling his behavior the night of the crimes. (*See id.* at 1219). Dr. Galvez testified that family, society, and medicine all failed Petitioner, as he never got the treatment he needed to keep the crime from occurring. (*See id.* at 1220).

On cross-examination, Dr. Galvez maintained that while Petitioner was legally sane at the time of the murder, he was suffering an extreme mental or emotional disturbance at the time of the murders due to his personality disorder. (*See id.* at 1222-26). Dr. Galvez testified that Petitioner's resentment toward authority, anger, and destructive behavior are all part of the disorder. (*See id.* at 1227).

In rebuttal to Dr. Galvez's testimony, the State presented the testimony of Dr. Reb McMichael, a psychiatrist and Director of Forensic Services of the Mississippi State Hospital. (*See id.* at 1230). He testified that Petitioner knew what he was doing and was not under an extreme mental or emotional disturbance at the time of the crimes. (*See id.* at 1231-32). Dr. McMichael conceded that Petitioner's ability to appreciate and conform his conduct on the night

of the crimes might have been substantially impaired, but he stated it was due to Petitioner's intoxication. (*See id.* at 1232, 1237). He also agreed that Petitioner has a personality disorder, but he maintained that the disorder did not excuse Petitioner's behavior. (*See id.* at 1233). On cross-examination, Dr. McMichael conceded that Petitioner was discharged from the State Hospital with specific instructions that were not followed, but that no one sought to enforce the order. (*See id.* at 1239-40).

The Mississippi Supreme Court considered Petitioner's claim on post-conviction review and found no evidence that counsel's pretrial investigation was insufficient. *Turner II*, 953 So.2d at 1073-74. The court noted that Petitioner's family members testified concerning Petitioner's background and character, and that Dr. Galvez provided testimony concerning Petitioner's mental illness and lack of culpability for the crimes. *See id.* The court found that the record supported a determination that counsel had consulted voluminous records and interviewed numerous witnesses, and that counsel was not ineffective in calling to testify only those witnesses they thought would be most effective. *See id.* The court noted that numerous affidavits were submitted in post-conviction proceedings, and it determined that "[m]uch of the proposed testimony in those affidavits is repetitive of what was presented to the jury. . . . [and further exploration and testimony] would only have been cumulative." *See id.*

Petitioner argues that it was unreasonable for the State court to determine that the evidence offered on post-conviction was cumulative of the witness testimony presented at trial and within the realm of trial strategy, as Petitioner's counsel failed to interview numerous witnesses and discover the available, pertinent information. Respondents maintain that most of the information Petitioner has presented to this Court by way of family and friend affidavits was presented to the jury at his trial, with the exception of his family's history of mental illness and

Petitioner's isolation from the Turner family after his father's death. Respondents argue that as Petitioner worked in his paternal uncle's business before the instant crimes, he was not completely "cut off" from his father's family. (*See* Ex. 2, Aff. of Dent Turner). Respondents also note that the affidavits, while mostly hearsay, otherwise contain information that would have been damaging if revealed in cross-examination. Respondents also maintain that Petitioner's medical records would have been damaging if they had been introduced. Respondents, arguing that counsel provided reasonable professional assistance by not presenting the evidence, note that:

- Petitioner had a trust fund but was afraid to work for fear of losing government assistance that paid for his facial reconstruction. (Pet. Memo, Ex. 2)

- Petitioner's hospital records reveal violent outbursts and oppositional behavior, that he exaggerated his symptoms, and that he has a tendency to blame others for his problems. (PCR Ex. O).

- Petitioner has a long history of substance dependence, did not complete the substance abuse program in which he was enrolled, and he made threats to kill his stepfather. (PCR Ex. P).

- Petitioner was in denial about his antisocial acts, which included that he threatened to kill his brother, kicked open the door to his brother's car, and pulled a gun on a cashier. (PCR Ex. R).

- Petitioner wrecked both his stepfather's car and his stepsister's car prior to his second admission to St. Joseph's in September 1991. (PCR Ex. Q).

- On the seventh night of his treatment at GLH following his second suicide attempt, Petitioner overpowered a nurse and escaped from his room, and he was later discharged against medical advice. (PCR Ex. S).

Respondents also argue that Dr. Verlangieri's affidavit fails to conclude that Prozac caused a manic episode in this case, but rather, he states that additional testing is needed to reach a conclusion. They argue that counsel either failed to have testing performed, or that the testing results were not favorable to Petitioner, as the results are not presented to the Court. Respondents also contend that Dr. Zimmerman's affidavit is only a disagreement with trial counsel's expert of choice and is insufficient to provide Petitioner with habeas relief.[6]

Having considered the evidence that was presented at trial and the evidence that was omitted, the Court finds that it was not objectively unreasonable for the Mississippi Supreme Court to conclude that counsel was not ineffective in failing to investigate or present mitigating evidence at Petitioner's trial. The Court has recounted the evidence actually presented at trial. (*See also* Trial Tr. vol. 13, 1158-1199; Trial Tr. vol. 14, 1200-27). The information offered in the affidavits of Petitioner's friends and family would have been largely cumulative to that presented at trial, and its omission does not render the decision that counsel was not ineffective unreasonable. *See Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007) (holding counsel's decision not to present cumulative testimony is not ineffective assistance); *United States v. Harris*, 408 F.3d 186, 191 (5th Cir. 2005) ("This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel."). Additionally, Petitioner has not shown that it was unreasonable for the court to conclude that counsel interviewed many family members but only called the most effective witnesses to give testimony. *See Bobby v. Van Hook*, 130 S.Ct. 13, 19 (2009) (the Court holding it was not unreasonable "for his counsel not to identify and interview every other living family member or every therapist who

---

[6] Respondents also maintain that Petitioner failed to use due diligence to obtain the information in Dr. Zimmerman's report.

once treated his parents.").

Moreover, it is clear from the testimony given at trial that Dr. Galvez had and reviewed Petitioner's medical and psychiatric records. Counsel elicited from the State's rebuttal expert that Petitioner's ability to conform his actions to the requirements of the law was impaired at the time of the crimes, as well as the fact that the court system failed to act on Petitioner's noncompliance with the conditions of his release from the State Hospital. (*See id.* at 1237-38, 1240). The argument that Petitioner's prescribed medication led to the crimes is speculative and, as Respondents argue and this Court agrees, reflects only a disagreement between experts.[7] Counsel was entitled to rely upon his expert's reasonable opinion that it was Petitioner's personality disorder, and not the medication, that led to the crimes. *See Smith v. Cockrell*, 311 F.3d 661, 676-77 (5th Cir. 2002). Moreover, it is speculative that a jury would have assessed Petitioner's culpability any differently with the additional testimony that Prozac can trigger mania. The additional evidence offered is not of a character so compelling that there exists a reasonable probability that at least one juror would have decided he was less culpable and deserving of a lesser sentence. *See Neal v. Puckett*, 286 F.3d 230, 241 (5th Cir. 2002) (stating that the inquiry for the prejudice prong requires asking whether "the additionally mitigating evidence [is] so compelling that there is a reasonable probability at least one juror could reasonably have determined that, because of [Petitioner's] reduced moral culpability, death was not an appropriate sentence?"). Trial counsel presented testimony from Petitioner's expert that Petitioner's personality disorder rendered him incapable of conforming his conduct to the requirements of the law. (*See* Trial Tr. vol. 14, 1208-1227). Petitioner has failed to present clear and convincing

---

[7] This Court granted Petitioner's two requests to allow Dr. Zimmerman contact with Petitioner for the purpose of conducting a mental health evaluation.

evidence of error in the court's factual findings, and he has failed to demonstrate that the decision reached by the Mississippi Supreme Court was contrary to or based upon an unreasonable application of *Strickland* and its progeny. This claim shall be dismissed.

## 2. Inviting damaging evidence in sentencing

Petitioner presented testimony from three of his family members at the sentencing phase of his trial, and each testified regarding his good character traits. (*See*, *e.g.*, Trial Tr. vol. 13, 1158-1200; 1201-04). On cross-examination, the State inquired of the witnesses whether they knew that Petitioner had assaulted his mother and step-father. (*See* Trial Tr. vol. 13, 1169, 1182). Both witnesses denied knowing any such fact, and both indicated that Donna was not afraid of Petitioner. (*See id.*). Petitioner maintains that counsel rendered ineffective assistance in dealing with the improper questions posed by the prosecutor. Petitioner notes that his mother denies the abuse and would have rebutted the inference if she had been questioned. (Pet. Memo, Ex. 21, Declaration of Ladonna Sanders Turner, October 20, 2008). He otherwise argues that under *Woodward v. State*, 635 So.2d 805, 810 (Miss. 1993), counsel could have presented good character evidence without opening the door to negative evidence. He argues that counsel was ineffective for not realizing they could proffer mitigating evidence without making Petitioner's prior bad acts admissible, and that counsel was ineffective for failing to object to the questions posed on cross-examination.

On direct appeal, Petitioner raised the issue of the prosecutor's questions as one of prosecutorial misconduct. *Turner I*, 732 So.2d at 950. The court noted that counsel had failed to object to the issue and had waived it for purposes of appeal. *See id.* The court otherwise found that Petitioner put his character into evidence, and that the State was entitled to ask the witnesses questions designed to rebut their "good character" testimony. *See id.* On post-conviction review,

the court rejected Petitioner's claim that his attorneys could have presented the evidence of abuse without opening the door to prior bad acts testimony. *See Turner II*, 953 So.2d at 1075. The Court found that Petitioner's reliance on *Woodward* was inappropriate given that Petitioner's general background was provided to the jury and there was no allegation that counsel gave an inadequate closing argument. *See id.* The court noted that Petitioner had offered "no authority to explain how counsel could have accomplished" putting on good character evidence without risking cross-examination about the bad character proof. *See id.* The court found no evidence that counsel was ineffective and rejected the claim. *See id.* Petitioner maintains that he did, however, claim in post-conviction that his background was not adequately presented to the jury, so the court unreasonably determined the facts of the case.

The Court first notes that Petitioner has not demonstrated how trial counsel could have prevented the prosecutor from posing the complained of questions to the witnesses, as *Woodward* is distinguishable from the instant case. In *Woodward*, a psychiatrist, Dr. Thurman, was the only witness called by the defense, and he would have testified that Woodward suffered from a mental disturbance at the time of the crime. *See Woodward*, 635 So.2d at 810. However, counsel would not allow Dr. Thurman to testify to Woodward's history and background, but only to the results of the testing. *See id.* Counsel was relying "solely on mental illness as a mitigating factor" but failed to offer all of the available evidence. *Id.* The court found that counsel's failure to present the evidence in conjunction with the deficient closing argument counsel presented was prejudicial error. *See id.* Though Petitioner takes issue with the extent of the evidence offered, his trial counsel did present background information and evidence of Petitioner's mental illness in this case.

Under Mississippi law, when an accused offers evidence of a positive character trait he

opens the door for the prosecution to "rebut the same." *See* Miss. R. Evid. 404(a)(1). Petitioner has not demonstrated why the prosecutor's questions were objectionable, and counsel does not perform ineffectively in failing to lodge a baseless objection. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (holding counsel not deficient in failing to object to admission of testimony admissible under then-existing precedent); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) (noting that prejudice does not flow from counsel's failure to raise a meritless claim). Petitioner has not demonstrated that the Mississippi Supreme Court's decision was based upon an unreasonable determination of facts, nor that it involved an objectively unreasonable application of controlling federal law. This claim shall be dismissed.

### 3. Failure to move for mistrial on cross-examination

Petitioner maintains that the State was obligated to support their allegations that Petitioner threatened his stepfather and abused his mother with proof, and that counsel performed ineffectively in not requiring Petitioner to back up the statements with evidence. In State court, Petitioner argued that *Flowers v. State*, 773 So.2d 309, 326-27 (Miss. 2006), requires that counsel have a good faith basis for asking a question on cross-examination, and that the right to a fair trial is impinged otherwise. On post-conviction review, the Mississippi Supreme Court found that as the State was allowed to rebut the testimony given by defense witnesses with evidence of bad conduct, counsel was not ineffective in failing to seek a mistrial in light of permissible questions. *See Turner II*, 953 So.2d at 1075-76 (citing *Turner I*, 732 So.2d at 950). In reaching this conclusion, the court noted that *Flowers* could not have been cited by trial counsel, as it was decided after Petitioner's case was decided. *See id.* at 1075.

Petitioner argues that the precedent upon which *Flowers* relies is long-standing and well-founded, and that Petitioner's sentence would have been vacated had the issue been raised on

appeal. Petitioner also maintains that the Mississippi Supreme Court's adjudication of this claim involved two incorrect premises. First, he argues, the reasoning he relies upon in support of the claim dates back to 1973, over twenty years before Petitioner's trial. Second, he maintains that the court mischaracterized his claim, as the court's analysis did not focus on the fact that it violates fundamental fairness to allow a prosecutor to pose questions based on facts not shown to be true.

The evidentiary rulings of a State court, even if erroneous, are not grounds for federal habeas corpus relief unless those errors denied Petitioner fundamental fairness under the Due Process Clause. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). This Court cannot conclude that Petitioner was denied a fundamentally fair trial as a result of the questions posed by the prosecutor. Moreover, Petitioner cannot support his claim of ineffective assistance of counsel or any underlying due process claim by having the court presume that no evidence supported the question. *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).

No offer of proof was made by the prosecution because no objection was lodged by defense counsel, but the record nonetheless reveals some support for finding the questions relevant. Donna's sisters, Marsha Shaw and Pam Creswell, both testified at the sentencing phase of Petitioner's trial. When asked whether Petitioner had ever threatened or abused his mother and stepfather, each of them denied that Petitioner threatened violence toward his mother and stepfather. (*See* Trial Tr. vol. 13, 1169, 1182). Each of them also stated that they had discussions with Donna about whether Petitioner was violent toward her or made her feel afraid of him. (*See id.*). During the prosecution's cross-examination of Martha Shaw, the prosecutor asked whether she was "aware of the fact that [Petitioner's] mother and stepfather have had to both go to the

Sheriff's Department?" Mrs. Shaw stated that she was, as she had seen it in the paper and asked Donna about the incident. (Trial Tr. vol. 13, 1171). Additionally, Petitioner's records from the Mississippi State Hospital contain a notation of a "homicidal threat" Petitioner made to his step-father. (PCR Ex. P).[8] The Mississippi Supreme Court's rejection of Petitioner's *Strickland* claim based upon counsel's failure to seek a mistrial has not been shown unreasonable, and this claim shall be dismissed.

## II. Sentencing on Factors/Facts Not Found by Jury

### 1. Unconstitutional aggravating circumstances/skewing of aggravating circumstances

At Petitioner's trial, the sole aggravating circumstance sought by the State was that "[t]he capital offense was committed for pecuniary gain" *See* Miss. Code Ann. § 99-19-101(5)(f). Petitioner maintains that the prosecutor did not limit his closing argument to the pecuniary gain aggravator, as he argued that the brutality of the crime as a factor that justified the death penalty. He argues that though the jury was encouraged to consider the brutal nature of the crime in reaching their decision, the jury was not required to agree on the factor, and the factor was not defined for the jury. He maintains that his jury was given unbridled discretion as a result, as the Eighth Amendment forbids the use of the "especially heinous, atrocious or cruel" aggravator without a limiting instruction. *See Maynard v. Cartwright*, 486 U.S. 356 (1988); *Clemons v. Mississippi*, 494 U.S. 738 (1990); *Stringer v. Black*, 503 U.S. 222 (1992). Petitioner argues that counsel was deficient in failing to object to this argument, and the Mississippi Supreme Court reached decisions contrary to clearly established precedent in failing to properly limit the jury's

---

[8] The Court also notes that Petitioner's mother signed a declaration on October 20, 2008, denying that Petitioner had ever abused her. (*See* Pet. Memo, Ex. 21). The Court notes that this declaration was not presented to the Mississippi Supreme Court, and it does not otherwise prove that there was no support for the questions posed.

consideration of aggravating factors.

Petitioner cites the following passages from the prosecutor's closing in support of his

argument:

> Because of the gruesomeness of this crime, because of the way it was conducted,
> that [death] is the only appropriate sentence for this crime.
>                                    ***
> Ya'll remember how this crime was committed.  You remember how gruesome it
> was.  (Trial Tr. vol. 14, 1279)
>                                    ***
> This Defendant for no reason shoots him.  And as we already know, that shot
> would have killed him.  But that wasn't enough. . . [T]his Defendant is the type
> person that has such an anger that the fact that he couldn't get the cash register
> open was enough to stick a gun up to his face and shoot him in the face again.
> This is the kind of Defendant that we are dealing with.  This is why we are asking
> for the death penalty in this case.
>     Then we go to the second store. . . We have got a man that is minding his
> own business trying to pump gas in his car. . . . This Defendant goes up to him
> with the same rifle.  He begs him not to kill him.  He tries to give him his money. .
> . . And what does [Petitioner] do?  He puts the rifle up to the side of his head and
> blows his brains out with the rifle for no reason.  This again is why we are asking
> you to return the death penalty in this case.  This is a very brutal and gruesome
> case.  (Trial Tr. vol. 14, 1280)
>                                    ***
> This person decided he would go out and brutally kill these people during the
> commission of an armed robbery . . . I submit to you that he is a monster.
> (Trial Tr. vol. 14, 1296)

On direct appeal, the Mississippi Supreme Court considered Petitioner's argument that the

prosecutor insinuated the especially heinous, atrocious and cruel aggravator in his closing

argument, and it noted that trial counsel made no objection to the State's argument during the first

two comments made by the prosecutor.  *See Turner I*, 732 So.2d at 955.  The court found these

instances of alleged error waived due to counsel's failure to contemporaneously object.  *See id.*

The court noted that Petitioner did object to the third reference to the gruesome nature of the

killing, and that the trial court overruled the objection.  *See id.*  The court found that "[g]ruesome

was an apt and proper description of the circumstances of these slayings.  This Court has held that

the State can present the detailed circumstances of the murder committed by the defendant during the sentencing phase or during a resentencing phase even though the facts of the crime do not support one of the aggravating factors." *See id.* at 955-56. The court found that the State could properly argue facts and draw inferences in order to prove that Petitioner had the requisite culpable intent under the statute. *See id.* at 956. The court also noted that the jury was instructed on one aggravating circumstance and "had no way under the instructions to base their sentence of death on any argument" not listed as an aggravating factor. *See id.*

On post-conviction review, the court considered whether the jury was allowed to return its verdict on evidence outside of the aggravating factor listed at trial. *See Turner II*, 953 So.2d at 1076. The court rejected Petitioner's argument that *Apprendi v. New Jersey*, 530 U.S. 466 (2000)[9]; *Ring v. Arizona*, 536 U.S. 584 (2002)[10] and *Blakely v. Washington*, 542 U.S. 296 (2004)[11] applied, as they were not handed down until Petitioner's direct appeal was final and are not retroactively applied. *See id.* at 1076. The court also noted that the arguments about the brutality of the offense were decided on direct appeal and found without merit. *See id.*

Respondents maintain that the legal arguments Petitioner presents for federal habeas review are barred from this Court's consideration, as they have never been presented to the State court. The claim raised on post-conviction review concerning trial counsel's ineffectiveness is clearly not the claim raised here, as Petitioner argued on post-conviction review that his Sixth

---

[9] Petitioner cites to *Apprendi* for the holding that a defendant cannot be exposed "to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *See Apprendi*, 530 U.S. at 483.

[10] *Ring* applied *Apprendi* to capital cases.

[11] *Blakely* dealt with a sentence in excess of the standard range under Washington's Sentencing Reform Act based on the trial judge's finding that Blakely acted with deliberate cruelty in carrying out the crime.

Amendment right to have sentence-enhancing facts found by a jury was violated. Ordinarily, a claim not presented to the State court cannot be considered on federal habeas review. *See Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (holding that the exhaustion requirement is not satisfied where petitioner presents new legal theories in his federal habeas petition); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). In his direct appeal brief, however, Petitioner argued that the verdict was based on "arbitrary and undefined factors" as a result of the prosecutor's argument concerning the brutality of the crime. (*See* "Appellant Turner's Brief" at 44, No. 97-DP-0583-SCT). Out of an abundance of caution that Petitioner's current claim merely supplements the claims raised in State court, the Court will address its merits. *Anderson*, 338 F.3d at 386-87 (holding that dismissal is not required on exhaustion grounds where claim does not fundamentally alter the claim presented to the state courts).

The cases cited by Petitioner hold that the Constitution requires a limiting instruction with the use of the "especially heinous" aggravator to avoid it being unconstitutionally vague. *See Stringer v. Black*, 503 U.S. 222 (1992); *Clemons v. Mississippi*, 494 U.S. 738 (1990); *Maynard v. Cartwright*, 486 U.S. 356 (1988). The jury in this case was not instructed on the "especially heinous" aggravator, and therefore, had no way to give it any weight. *See* Miss. Code Ann. § 99-19-101(5). Moreover, Petitioner's jury was instructed not to consider the arguments of counsel as evidence, and juries are presumed to follow their instructions. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Petitioner has not demonstrated that counsel performed ineffectively in failing to object to the prosecutor's description of the crime, and as the jury was not instructed to consider the brutality of the crime in aggravation, he was not prejudiced. This claim does not warrant federal habeas relief, and it shall

be dismissed.[12]

## 2. Proportionality review based on facts not found by jury

The Mississippi Supreme Court is mandated to conduct a proportionality review in each case resulting in a sentence of death to determine whether the sentence is excessive to the penalty imposed in similar cases, while considering both the crime and the defendant. *See* Miss. Code Ann. §99-19-105(3)(c). Petitioner notes that only one aggravator was found by the jury in his case, and that the Mississippi Supreme Court's proportionality review included a comparison of seventy-two cases. Only one of those cases, Petitioner argues, involved only one aggravating circumstance, and he notes that it was ultimately vacated on habeas corpus review. Petitioner also argues that the facts relied upon by the court in finding the sentence proportional on post-conviction review were not found by the sentencing jury, as the jury only found that he participated in two killings in the course of robberies and for pecuniary gain.

On post-conviction review, the Mississippi Supreme Court found Petitioner's claim as to the inadequacy of its proportionality review barred as having been addressed on direct appeal. *See Turner II*, 953 So.2d at 1076-77 (citing *Turner I*, 732 So.2d at 956). It otherwise determined that the sentence was not disproportionate and stated that Petitioner "killed two men without provocation. Both were shot in the head at close range during robberies. The jury's finding that the murders were done for pecuniary gain is unequivocal." *See id.* at 1077. Petitioner maintains that this review violated the rules of *Apprendi v. New Jersey*, 530 U.S. 483 (2000), *Ring v. Arizona*, 536 U.S. 584, 589 (2002) and *Blakeley v. Washington*, 542 U.S. 296 (2004), which hold

_____

[12] The Court finds Petitioner has abandoned the argument he made on post-conviction review in support of this claim. To the extent such a claim is raised herein, it does not provide Petitioner with relief. *Apprendi*, *Ring*, and *Blakely* were all decided after Petitioner's direct appeal became final, and they have no retroactive application in Mississippi. (*See Turner II*, 953 So.2d at 1076).

that the Sixth Amendment does not allow a defendant to be exposed to penalty exceeding that which he would receive if he were punished according to the sole facts reflected in the jury's verdict.

Petitioner is not entitled to federal habeas relief on this claim, as there is no federal constitutional right to a proportionality review. *Pulley v. Harris*, 465 U.S. 37, 50-51 (1984). Petitioner supports his claim by maintaining that he is the only death-sentenced individual in Mississippi whose sentence has been affirmed based on the existence of one aggravating factor. Even if Petitioner's claim is accurate, he cannot "prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty." *McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987). Petitioner also cannot obtain relief by suggesting that the Mississippi Supreme Court improperly considered nonstatutory aggravating factors in its proportionality review. Petitioner has not demonstrated that Mississippi sentencing procedures fail to adequately channel the jury's discretion, thus he cannot demonstrate that the sentence is disproportionate as contemplated by the Eighth Amendment. *See id.* at 308.

The Court additionally notes that the Mississippi Supreme Court expressly determined that *Apprendi*, *Ring*, and *Blakely* were not retroactively applied and were inapplicable to Petitioner's claim. *See Turner II*, 953 So.2d at 1076. Petitioner has not demonstrated that the court's decision entitles him to relief. *See Danforth v. Minnesota*, 552 U.S. 264,128 S. Ct. 1029, 1048 (2008) ("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."). Moreover, the Court notes that Petitioner's exposure to punishment was not increased by the proportionality review, as he was already under a sentence of death at the time it was performed. This claim shall be dismissed.

# III. Errors on Direct Appeal

## 1. Prosecutorial misconduct

Petitioner maintains that his trial was rendered fundamentally unfair when the prosecutor was allowed to cross-examine witnesses at the sentencing phase of his trial concerning allegations that Petitioner had abused his mother and stepfather, and that they had called law enforcement for assistance. (*See* Trial Tr. vol. 13, 1169, 1182). Petitioner maintains that his mother denies the allegations, and she could have rebutted the inferences had proper questions been posed. He argues that the prosecutor did not support the prejudicial allegations with evidence, thereby rendering his trial unfair. While he acknowledges this claim was found barred on direct appeal for counsel's failure to make a contemporaneous objection, he argues that counsel's ineffectiveness allows review of the merits of the claim.

On direct appeal, the court found that Petitioner had waived the issue by failing to object to the questioning at trial. *Turner I*, 732 So.2d at 950. The court otherwise found that Petitioner had placed his character into evidence, and that the State was allowed to rebut the good character testimony on cross-examination. *See id.* The Court finds that Petitioner's claim is here barred on the basis of an independent and adequate state procedural ground. *See, e.g., Coleman*, 501 U.S. at 729-30 ("The [state ground] doctrine applies to bar federal habeas claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests upon independent and adequate state procedural grounds."); *see also Stokes v. Anderson*, 123 F.3d 858, 860-61 (5th Cir. 1997) (finding Mississippi's contemporaneous objection requirement an independent and adequate procedural bar). The Court has already addressed Petitioner's allegations of trial counsel's deficiency with regard to this claim and found counsel not ineffective, therefore Petitioner has failed to demonstrate cause and prejudice for the default. *See*

*Coleman*, 501 U.S. at 750.

Even if this claim were not barred, Petitioner could not obtain relief on his claim, as he would be entitled to relief only if the prosecutor's actions rendered proceedings against him fundamentally unfair. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Such unfairness is demonstrated if the Court finds that the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Petitioner put his character into issue at sentencing, and the State was entitled to rebut the mitigating testimony offered. *See, e.g., Davis v. State*, 684 So.2d 643, 655 (Miss. 1996). Petitioner has failed to show that the questions were improper. Moreover, the allegation of abuse was denied by each of the witnesses, and the prosecutor did not belabor the issue. Therefore, even if the questions were improper, Petitioner was not denied due process as a result of them being posed. This issue is barred, and it otherwise fails to entitle Petitioner to relief.

**2. Improper limitation of mitigation evidence**

Petitioner argues two trial court errors in this ground. First, he maintains that the trial court barred him from eliciting information from three witnesses about his relationship with his mother. Second, he maintains that the trial court instructed the jury that they could consider "whether the capacity of Mr. Turner to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired." Petitioner maintains that the instruction offered by the defense and refused by the trial court struck the word "substantially" from the instruction. He argues that the trial court's rejection of his instruction precluded him from presenting mitigating evidence and prohibited the jury's full consideration of that evidence.

On direct appeal, Petitioner argued that defense counsel attempted to elicit testimony about his relationship with his mother from three of his witnesses, but that the trial court improperly sustained the prosecutor's hearsay objection. *See Turner I*, 732 So.2d at 950. The court noted that Petitioner had failed to point out the special or unique circumstances that would make the hearsay admissible during the testimonies of Marsha Shaw, Pamela Creswell, and Kenneth Creswell. *See id.* at 951. The court found that, as Petitioner did not proffer what the testimony would have shown, the assignment of error as to the first two witnesses was waived. *See id.* The court also noted that the questions to Mrs. Shaw and Mrs. Creswell related to something Petitioner's mother said to Petitioner, and that his mother, who was present at trial, could have testified to what she said. *See id.* The court noted that the question posed to Mr. Crewsell involved something Mrs. Creswell had said, and that trial counsel could have asked her the substance of the statement, as she testified immediately prior to Mr. Creswell. *See id.* at n.2.

Defense counsel questioned Marsha Shaw on direct examination about Petitioner's first failed suicide attempt that left him disfigured. (Trial Tr. vol. 13, 1165). Then defense counsel asked:

> Q. Do you know of any occasion where he and his mother had a conversation about the grotesque nature of his appearance?
> A. Yes. I was told by - -
> BY MR. EVANS: - - I object to what she was told. She is going to have to testify what she knows firsthand.
> BY THE COURT: Yes, ma'am. That is true.

(Trial Tr. vol. 13, 1165).

While questioning Pam Creswell, defense counsel asked her about Petitioner's disfigurement, and counsel asked whether she had any knowledge of a conversation between

Petitioner and his mother about his appearance following the suicide attempt. (Trial Tr. vol. 13, 1179). The following exchange occurred:

> Q. Are you aware of a conversation [Petitioner] and his mother had about his physical appearance after he shot himself?
> BY MR. EVANS: Unless she was present, I would object.
> BY THE WITNESS:
> A. I'm not sure. I'm not, don't remember. I mean I don't know anything about their conversation.
> Q. Do you know anything about a conversation they had about whether he could date other folks or anything?
> BY MR. EVANS: Your Honor, again, I would - -
> BY MR. DUKES: - - I'm asking - -
> BY MR. EVANS: - - I would ask that he have to ask questions about what this witness knows.
> BY MR. DUKES: That's what I'm asking.
> BY THE COURT: She must have - -
> BY MR. DUKES: - - Do you know and were you present at any conversation - -
> A. - - I was not present at any conversation.
> Q. All right. Did your sister tell you what she told [Petitioner]?
> BY MR. EVANS: Which is exactly what I just objected to. I object to him asking her questions that are hearsay.
> BY THE COURT: Sustained.

(Trial Tr. vol. 13, 1179).

Next, Pam Creswell's husband, Kenneth Creswell, testified. (Trial Tr. vol. 13, 1191-1200; Trial Tr. vol. 14, 1201-1204). When defense counsel attempted to ask Mr. Creswell about Petitioner's mental state after his return from the State Hospital, Mr. Creswell began to state what Petitioner had told Ms. Creswell. (Trial Tr. vol. 13, 1197). The State objected on hearsay grounds, and the trial court sustained the objection. (*See id.*). Counsel did not make a proffer with any of the three witnesses.

Petitioner's claim is barred on the basis of an independent and adequate state law bar. *See, e.g., Coleman*, 501 U.S. at 729-30. Even in the absence of a bar, however, this claim would not warrant relief. In a capital case, the sentencer may "not be precluded from considering, as a

mitigating factor, any aspect of a defendant's character or record and any of the circumstance of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (adopted by a majority in *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982)). However, a trial court is not required to allow a defendant to present evidence in any manner he wishes. The fact that Petitioner was not allowed to present evidence in the manner he wished to present it does not mean that he was prevented from presenting relevant mitigating evidence. Petitioner was not prevented from presenting evidence of his poor relationship with his mother. She was present throughout trial and could have been called to testify concerning any alleged statements. Additionally, Pam Creswell could have provided first-hand information about her conversation with Petitioner. Petitioner is not entitled to relief on this claim.

Petitioner's second allegation of error is that the trial court should have accepted his instruction that omitted the requirement that the jury consider whether Petitioner's mental impairment at the time of the crime was substantial. On direct appeal, the Mississippi Supreme Court noted that a "catchall" mitigating instruction was given in Petitioner's case, leaving the trial court free to reject disputed instructions on mitigating factors. *See Turner I*, 732 So.2d at 950-52. Errors in a state court's jury instructions do not form the basis for habeas relief unless the failure to give the proffered instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The United States Supreme Court has held that where a sentencing scheme sufficiently narrows death eligible offenses and does not limit the sentencer's consideration of relevant mitigating circumstances, it is constitutionally permissible. *See Blystone v. Pennsylvania*, 494 U.S. 299, 308-09 (1990). In *Blystone*, the Court considered the argument that the trial court's instruction that the jury could consider whether the defendant

suffered "extreme" or "substantial" impairments precluded the jury's consideration of lesser degrees of such impairments. *See id.* at 308. In rejecting the claim and finding that the defendant's presentation of relevant mitigating circumstances was not limited, the Court noted that the jury was instructed that it could consider "any other mitigating matter concerning the character or record of the defendant, or the circumstances of his offense." *Id.*; *see also Brown v. Payton*, 544 U.S. 133, 141-42 (2005); *Boyde v. California*, 494 U.S. 370, 382 (1990). The jury in this case was instructed to consider "catch-all" evidence. Where the jury is not precluded from considering constitutionally relevant evidence, there is no requirement that the jury be instructed on specific mitigating factors. *See Buchanan v. Angelone*, 522 U.S. 269, 276-79 (1998). Petitioner has not demonstrated that the Mississippi Supreme Court's decision was either contrary to, or involved an unreasonable application of, clearly established federal law, and this claim shall be dismissed.

### III. Lethal injection protocol

Petitioner contends that his sentence to die by lethal injection creates an unreasonable risk of inflicting serious harm in violation of the Eighth and Fourteenth Amendments to the United States Constitution, as the State's protocol lacks the necessary medical safeguards. He maintains that it is unclear whether the State has fully disclosed its accurate protocol for executions by lethal injection, and that the protocol itself has been a "moving target." Petitioner notes that a set of protocols was disclosed in response to an Open Records Act request in 2006, and another protocol was disclosed in 2008 as part of the federal law suit, *Walker v. Epps*, No. 4:07-cv-00176-WAP (N.D. Miss). Petitioner argues that this Court should grant him discovery to determine whether the protocol disclosed in the *Walker* case is, in fact, the accurate and entire protocol. He also maintains that as the factual basis for the challenge to the protocol was not disclosed until

2006, this Court should stay his petition and allow Petitioner to exhaust this claim in a successive State post-conviction petition.

Petitioner's claim challenging the method by which the State of Mississippi plans to execute him is improper in a habeas action, as the claim does not concern the fact or duration of his sentence. *See Hill v. McDonough*, 547 U.S. 573, 583-84 (2006). Even if the Court were to consider this claim cognizable in federal habeas review, it is barred for Petitioner's failure to raise the issue in State court. *See* 28 U.S.C. § 2254(b)(1); *Coleman*, 501 U.S. at 735 n.1. Moreover, Petitioner's conviction became final on November 1, 1999, when his petition for *writ of certoriari* was denied. *See Turner v. Mississippi*, 528 U.S. 969 (1999). Petitioner would not be entitled to review of this claim if the Court treated it as a § 1983 claim, as Mississippi's three-year statute of limitations would bar the action. *See Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). Petitioner is not entitled to relief on this claim, and it shall be dismissed.

### Certificate of Appealability

Under the AEDPA, Petitioner must obtain a certificate of appealability ("COA") before he can appeal this Court's decision. 28 U.S.C. § 2253(c)(1). A COA will not issue unless Petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which Petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where a petitioner's claim has been denied on procedural grounds, Petitioner must additionally demonstrate that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. This Court must issue or deny a COA upon its entry of an order adverse to Petitioner. *See* Rule 11 of the Rules Governing § 2254 Cases. The Court, resolving in Petitioner's favor any doubt as

to whether a COA should issue, determines that Petitioner has not demonstrated that reasonable jurists would debate its procedural or substantive rulings on the claims raised by Petitioner. Therefore, a certificate of appealability will not issue from this decision.

## Conclusion

For the reasons set forth above, Petitioner has not demonstrated that the denial of his State petition was contrary to, or involved an unreasonable application of, clearly established federal law, nor has the denial been shown to have been based on an unreasonable determination of facts in light of the evidence presented in the State court proceedings. Accordingly, it is hereby **ORDERED** that:

1. All federal habeas corpus relief requested by Petitioner is **DENIED**, and the instant petition shall be **DISMISSED** with prejudice.

2. Petitioner's request for an evidentiary hearing is **DENIED**.

3. All pending motions are **DISMISSED** as moot.

4. Petitioner is **DENIED** a Certificate of Appealability on all claims raised in the petition.

5. A separate Judgment in conformity with this Opinion and Order shall issue today.

**SO ORDERED**, **THIS** the 19th day of February, 2010.


/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE