**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**EDWIN HART TURNER**                                                                 **PETITIONER**

**v.**                                                                                         **No. 4:07CV77-WAP**

**CHRISTOPHER EPPS, ET AL.**                                                    **RESPONDENTS**

**ORDER DENYING MOTION TO ALTER/AMEND JUDGMENT**

Pursuant to Rule 52 and Rule 59 of the Federal Rules of Civil Procedure, Petitioner asks this Court to reconsider its February 19, 2010, judgment denying his federal habeas petition.[1] Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move for reconsideration of a final judgment where there exists a need to: (1) correct a clear error or prevent manifest injustice; (2) present previously undiscoverable evidence; or (3) reflect an intervening change in controlling law. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). Having considered all of the arguments raised by Petitioner, the Court determines that Petitioner fails to demonstrate any of the narrow circumstances that would warrant amendment to the judgment, for the reasons that follow.

Petitioner maintains that this Court committed manifest error in failing to grant the writ on the ground that he was deprived of the effective assistance of counsel due to trial counsel's failure to develop and present mitigating evidence at the sentencing phase of his trial. *See Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, he argues that trial counsel's

---

[1] Docket entry no. 71.

failure to interview his family members and present their testimonies at trial was deficient performance, and that it is an unreasonable determination of the facts to find otherwise. He also argues that it is an unreasonable application of clearly established law to find he was not prejudiced by counsel's performance, as the additional presentation of lay and expert testimony would have altered the outcome of the sentencing phase of his trial.

Specifically, Petitioner disagrees with this Court's acceptance of the State court's determination that many family members were interviewed by trial counsel but only the most effective called to give testimony at trial. Petitioner presented numerous affidavits from family members during post-conviction proceedings and in federal habeas proceedings that state that family members were not contacted by counsel and would have been willing to help in any way possible. He argues that the thirteen affidavits referenced by the instant motion provide unrebutted evidence that members of his father's side of the family were not contacted by his attorneys.

Both the State court and this Court have noted that defense counsel presented the testimony of three lay witnesses and one expert at the sentencing phase of Petitioner's trial. The family members called by defense counsel to give testimony were directly involved in and aware of the circumstances surrounding Petitioner's childhood. The issue for the Court's consideration is not whether defense counsel should have called witness from the paternal side of Petitioner's family, or whether he could have spent more time preparing the witnesses who did testify. Rather, the issue is whether the finding that counsel conducted a reasonable investigation is unreasonable. To say that counsel had to interview the father's side of the family in order to present a reasonable mitigation case is an attempt to create a rule that *Strickland* does not

demand.  *See Strickland*, 466 U.S. 690 ("Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.").

Moreover, the Court disagrees that the affidavits presented by Petitioner establish an unreasonable factual determination based upon the record.  The affidavits establish that Petitioner's mother and grandmother were interviewed by an investigator working for the defense.  (*See* Pet. Memo, Ex. 9).  Other affidavits note that defense counsel, James Duke, spoke to gathered family members about their testimonies in a witness room before mitigation testimony was presented.  (*See* Pet. Memo, Ex. 9, 11).  The affidavit of Petitioner's step-grandfather, Albert Watson Tate, indicates that he waited in the witness room during trial with the family members who testified.  (*See* Pet. Memo, Ex. 6).  Lori Bell states that she "tried to help the lawyers" by telling them about her relationship with Petitioner and taking them letters and journals.  (*See* Pet. Memo Ex. 15).  At the very least, therefore, counsel was aware of what these uncalled witnesses could provide by way of mitigation if they were called to testify.  The Court declines to alter its judgment based upon Petitioner's disagreement with the modifier "many" in reference to known family members who were in some way in contact with defense counsel but did not testify.

Additionally, Petitioner argues that this Court erred in its determination that the State court's determination as to the prejudice prong of *Strickland* was not unreasonable.  He argues that prejudice was clearly established because the evidence that should have been admitted through the testimony of lay witnesses was not cumulative, that the opinion that Prozac triggered

3

mania in Petitioner is not speculative, and that the omitted evidence is of such a compelling nature that prejudice did result from counsel's failure to present it.

Petitioner argues that the additional lay evidence, including the omitted testimonies of members of his father's family and the psychiatric history of his relatives, would have altered the conclusion of defense expert, Dr. Galvez, that it was Petitioner's personality disorder that led to the crimes. He maintains that the additional evidence would have provided Dr. Galvez with sufficient information to properly diagnose Petitioner as suffering from Bipolar Disorder or some form of Schizoaffective Disorder. He maintains that the proper diagnosis is crucial to his case, as Prozac is known to trigger manic episodes in patients with these types of disorders. To support that conclusion, he attaches to the instant motion a declaration from psychiatrist, Mark C. Webb, dated March 18, 2010. Dr. Webb's declaration has never been presented in any prior proceedings in this Court or in State court. Dr. Webb's declaration is not properly before the Court, and it will not be considered.[2] *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) ("A motion to alter or amend the judgment under Rule 59(e). . . cannot be used to raise arguments which could, and should, have been made before the judgment issued."); *Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006) (rejecting habeas claim raised for first time in Rule 59(e) motion).

Aside from Dr. Webb's opinion, however, the Court considers Petitioner's contention that he was prejudiced by counsel's failure to provide his expert with sufficient evidence to properly diagnose him with Bipolar Disorder. He argues that the presence of an organic brain disorder, rather than a personality disorder, would have altered the jury's appraisal of his

---

[2] The Court also notes that Dr. Webb has never personally evaluated Petitioner.

culpability. He maintains that the Court erred in finding the claim speculative, as Dr. Marc Zimmerman found, to a reasonable degree of certainty, that the Prozac prescribed to Petitioner triggered a manic episode during which the crimes were committed. (*See* Pet. Memo, Ex. 7).

In 2008, Dr. Zimmerman presented this Court with the first definitive opinion that Petitioner suffers from a Bipolar Disorder and committed capital murders while in a Prozac-driven, manic state. The Court notes that psychologist, Penny Hawes, was initially hired by defense counsel to evaluate Petitioner before trial. There is no indication in the record that she found that Petitioner might suffer from Bipolar Disorder or that Prozac might have caused Petitioner to be manic. Dr. Galvez's trial testimony establishes that Petitioner's medical records were sixteen to eighteen inches thick, and that he reviewed all of Petitioner's medical history prior to rendering an opinion. Petitioner was not diagnosed with Bipolar Disorder in any of the mental health records reviewed by Dr. Galvez, and Dr. Galvez did not find that Petitioner suffers from the disorder. At trial, defense counsel specifically asked both Dr. Galvez and the State's expert, Dr. McMichael, the significance of Petitioner's ingestion of Prozac as it relates to the murders, and both rejected it as a significant factor. Defense counsel gathered Petitioner's extensive medical history, submitted it for expert review, and had Petitioner evaluated by two experts prior to trial. That Petitioner has now presented a different opinion from another expert does not render the Mississippi Supreme Court's determination of counsel's effectiveness unreasonable.

In its opinion dismissing the petition for writ of habeas corpus, the Court noted that the following evidence was presented in mitigation at Petitioner's trial:

> At the sentencing phase of Petitioner's trial, three family members and one expert testified for the defense. These witnesses testified to Petitioner's loving,

>  respectful nature as a child; his popularity in school; the physical and verbal abuse he was subjected to at home; that he had been institutionalized several times; that he had attempted suicide twice; that he was kicked out of the home left to him by his deceased father and forced to live in the woods; that family members had called the Department of Human Services to report the abuse and neglect Petitioner and his brother suffered; that Petitioner's mother favored Trent over Petitioner; that the State failed to properly treat his illnesses; that family members met with a judge to try to get Petitioner sentenced somewhere he would receive proper care; that family members attempted to take Petitioner and Trent, but [their mother] refused to allow them to go live with family members; and that Petitioner's family life, medical treatment, and untreated personality disorder led to this crime. (*See* Trial Tr. vol. 13, 1158-1199; Trial Tr. vol. 14, 1200-27).

(Memorandum Opinion and Order at ** 25-26). The dysfunction in Petitioner's home life is documented in his medical history, and Dr. Galvez testified that Petitioner's personality disorder was created by the failures of Petitioner's family to properly care for him. (*See, e.g.*, PCR Ex. S).

Through the direct and cross-examination of witnesses, the jury was presented specific testimony about Petitioner's treatment at the hands of his family. The jury heard that Petitioner's mother was a violent alcoholic who inflicted abuse upon Petitioner so horrific that his maternal aunt did not "know where to begin telling it." (*See* Trial Tr. vol. 13, 1163). The jury heard how Petitioner's stepfather kicked Petitioner out of the home left to him by his deceased father, and how Petitioner's mother and her husband would often throw Petitioner and his clothes out of the house. (*See id.* at 1163-1193). The jury heard that Petitioner's mother wanted to "run him crazy" so that she could get control over some of the money in trust for Petitioner. (*See id*. at 1193). The jury heard that family members, unable to secure the children's well-being and safety because of the conduct of their mother, called the Department of Human Services to get help for Petitioner and his brother. (*See id*.). Defense counsel presented mitigation testimony about the treatment of Petitioner by his family. The fact that the jury heard this testimony from

maternal relations, as opposed to paternal family members, does not alter this Court's judgment.

Additionally, the Court does not find that Petitioner has made a substantial showing of the denial of a constitutional right; therefore, it does not find that it committed error in refusing Petitioner a certificate of appealability on his claim. *See* 28 U.S.C. § 2253(c)(2).

Finally, the Court notes Petitioner's argument that he is entitled to an evidentiary hearing on his claim as he has alleged facts that, if proved true, would entitle him to relief. The Court first notes that 28 U.S.C. § 2254(e)(2) potentially prevents this Court from holding an evidentiary hearing on Petitioner's *Strickland* claim, as he has presented evidence to this Court that has not been presented in State court. The Court determines, however, that it need not decide whether Petitioner has acted with due diligence to discover the facts pertaining to his claim, as Petitioner has not presented this Court with a need for further factual development of this issue. The Mississippi Supreme Court adjudicated this claim on its merits with consideration of the evidence presented to it, and the adjudication is supported by the record. As such, the Court gives deference to the State court findings under § 2254, and an evidentiary hearing is not warranted.

Therefore, all relief requested in the instant motion is **DENIED**.

**SO ORDERED**, this the 15th day of April, 2010.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE